# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

Jerkerris Griffin, individually and on
behalf of all others similarly situated,

Plaintiff,

- against -                                Class Action Complaint

Publix Super Markets, Inc.,

Defendant                        Jury Trial Demanded

Plaintiff alleges upon information and belief, except for allegations pertaining

to Plaintiff, which are based on personal knowledge:

1.    Publix Super Markets, Inc. ("Defendant") sells "Apple Cinnamon

Flavored Fruit & Grain Cereal Bars" ("Product").



2.    The representations are misleading because the labeling omits the use of

artificial flavoring ingredients to simulate, resemble and reinforce the Product's

apple taste.

## I.    CONSUMER AVOIDANCE OF ARTIFICAL FLAVORS

3.    According to the Wall Street Journal, "As consumer concern rises over artificial ingredients, more food companies are reconstructing recipes" to remove artificial flavors.[1]

4.    Artificial flavor is "any substance, the function of which is to impart flavor" from sources other than fruits or vegetables. 21 C.F.R § 101.22(a)(1).

5.    Natural flavor refers to the "essence or extractive" from fruits or vegetables, "whose significant function [] is flavoring rather than nutritional." 21 C.F.R § 101.22(a)(3).

6.    According to Paul Manning, CEO and president of Sensient Technologies, "Consumer desire for naturally flavored products is an emerging trend."[2]

7.    Recent surveys report that over eighty percent of Americans believe that foods with artificial flavor are less healthy than those with only natural flavors.

8.    According to Nielsen, the absence of artificial flavors is very important for over 40% of respondents to their Global Health & Wellness Survey.

---

[1] Lauren Manning, How Big Food is Using Natural Flavors to Win Consumer Favor, Wall Street Journal.
[2] Keith Nunes, Using natural ingredients to create authentic, fresh flavors, Food Business News, Sept. 20, 2018.

2

9.    The trade journal, Perfumer & Flavorist, described "The Future of Artificial Flavors & Ingredients" as bleak, given consumer opposition to these synthetic ingredients.[3]

10.    Mintel announced that consumer avoidance of artificial flavors is just as strong as their desire for natural flavors, in its Report, "Artificial: Public Enemy No. 1."[4]

11.    Surveys by Nielsen, New Hope Network, and Label Insight concluded that between sixty and eighty percent of the public tries to avoid artificial flavors.

## II.   MALIC ACID

12.    Flavors are substances that impart taste. 21 C.F.R. § 101.22(a)(1) and (3).

13.    Taste is a combination of sensations arising from specialized receptor cells in the mouth.[5]

14.    Taste is defined as sensations of sweet, sour, salty, bitter, and umami.

15.    Taste is complex, with the taste of sour including the sourness of vinegar (acetic acid), sour milk (lactic acid), lemons (citric acid), apples (malic acid), and

---

[3] Jim Kavanaugh, The Future of Artificial Flavors & Ingredients, Perfumer & Flavorist, June 12, 2017.
[4] Alex Smolokoff, Natural color and flavor trends in food and beverage, Natural Products Insider, Oct. 11, 2019; Thea Bourianne, Exploring today's top ingredient trends and how they fit into our health-conscious world, March 26-28, 2018; Nancy Gagliardi, Consumers Want Healthy Foods – And Will Pay More For Them, Forbes, Feb 18, 2015.
[5] Gary Reineccius, Flavor Chemistry and Technology § 1.2 (2d ed. 2005).

wines (tartaric acid).

16.   Each of those acids is responsible for unique sensory characteristics of sourness.

17.   Fruit flavors, including apple flavor, are the sum of the interaction between sugars, organic acids, and volatile compounds.[6]

18.   Consumer acceptability of the flavor of apples is based on their perceived sweetness, sourness and tartness.

19.   The prototypical apple taste is based on its accumulation of free sugars, mainly glucose and fructose, and its first predominant acid of malic acid to create its unique sour, tart and sweet flavor.

| Fruit | First Predominant Acids | Second Predominant Acids |
|---|---|---|
| Apple | Malic Acid (95%) | Tartaric Acid, Fumaric Acid |
| Apricot | Malic Acid (70%) | Citric Acid, Tartaric Acid |
| Blackberry | Citric Acid | Malic Acid |
| Blueberry | Citric Acid | Malic Acid, Quinic Acid |
| Cherry | Malic Acid (94%) | Tartaric Acid |
| Cherry (Tropical) | Malic Acid (32%) | Citric Acid |
| Chili Peppers (habanero) | Citric Acid | Malic Acid, Succinic Acid |
| Coconut | Malic Acid | Citric Acid |
| Dragon fruit | Malic Acid | Citric Acid |
| Grape | Malic Acid (60%) | Tartaric Acid |
| Grapefruit | Citric Acid | Malic Acid |
| Guava | Citric Acid | Malic Acid |

---

[6] Y.H. Hui, et al., Handbook of Fruit and Vegetable Flavors, p. 693 (2010).

| Kiwi | Quinic Acid, Citric Acid | Malic Acid |
| Lemon | Citric Acid | Malic Acid |
| Lime | Citric Acid | Malic Acid |
| Mango | Citric Acid | Malic Acid, Tartaric Acid |
| Orange | Citric Acid | Malic Acid |
| Peach | Malic Acid (73%) | Citric Acid |
| Pear | Malic Acid (77%) | Citric Acid |
| Pineapple | Citric Acid | Malic Acid |
| Pomegranate | Malic Acid (>50%) | Citric Acid (>22%) |
| Raspberry | Citric Acid | Malic Acid, Tartaric Acid |
| Strawberry | Citric Acid | Malic Acid, Tartaric Acid |
| Tamarind | Tartaric Acid | Citric Acid, Malic Acid |
| Watermelon | Malic Acid (99%) | Fumaric Acid |

20.  L-Malic acid gives apples their characteristic smooth, tart and sweet flavor.

21.  Malic acid is often referred to as "apple acid," with the word malic derived from the Latin mālum, for which Malus, the genus that contains all apple species, is named.

## III. CHEMICAL STRUCTURE OF MALIC ACID

22.  Malic acid is the common name for 1-hydroxy-1, 2- ethanedicarboxylic acid.

23.  Malic acid has two isomers, or arrangements of atoms, L-Malic Acid and D-Malic Acid. 21 C.F.R. § 184.1069.

24.  An isomer is a molecule sharing the same atomic make-up as another but

5

differing in structural arrangements.[7]

25.   Stereoisomers differ by spatial arrangement, meaning different atomic particles and molecules are situated differently in any three-dimensional direction.

26.   An enantiomer is a type of stereoisomer and like right and left-hand versions of the same molecular formula.

27.   D-Malic Acid and L-Malic Acid are enantiomers with almost identical skeletal formulas.



28.   L-Malic Acid occurs naturally in apples, while D-Malic Acid does not occur naturally anywhere.

29.   D-Malic Acid is most commonly found as a racemic mixture of the D and L isomers, or DL-Malic Acid, commercially made from petroleum.

30.   DL-Malic Acid is synthetically produced from petroleum in a high-pressure, high-temperature, catalytic process with chemical reactions.

---

[7] Dan Chong and Jonathan Mooney, Chirality and Stereoisomers (2019).

## IV.  LABEL OMITS ADDED ARTIFICIAL FLAVORING

31.   One of the Product's primary or "characterizing" flavors is "apple," because the label makes "direct [] representations" about this fruit through the word "Apple" and the green colors of the fonts and background on the package, associated with green apples, known for their tart, sweet and smooth flavor. 21 C.F.R. § 101.22(i).

32.   Federal and identical state regulations require the Product to disclose the source of its apple flavor on the front label, i.e., from apples, natural sources other than apples and/or artificial, synthetic sources. 21 C.F.R. § 101.22(i).

33.   Federal and state regulations require that because the Product contains DL-Malic Acid that imparts the flavor of apples, "Apple" is required to "be accompanied by the word(s) 'artificial' or 'artificially flavored,'" such as "Artificial Apple [and Cinnamon] Flavored" or "Artificially Flavored Apple [and Cinnamon]." 21 C.F.R. § 101.22(i)(2).

34.   By representing the Product as having an "Apple" flavor, consumers will expect its entire apple taste will come from its characterizing ingredients of apples or natural flavoring materials.

35.   Though the filling ingredients list "Apple Puree Concentrate," they also include "Malic Acid."

Ingredients: Apple Filling (Invert Sugar, Corn Syrup, Apple Puree

Concentrate, Sugar, Glycerin, Modified Cornstarch, Sodium
Alginate, Methylcellulose, Malic Acid, Monocalcium Phosphate,
Ground Cinnamon, Dicalcium Phosphate, Citric Acid, Apple Juice
For Color]), Whole Grain Rolled Oats, Whole Grain Wheat Flour,
Enriched Wheat Flour (Bleached Wheat Flour, Malted Barley
Flour, Niacin, Reduced Iron, Thiamine Mononitrate, Riboflavin,
Folic Acid), Vegetable Oil Blend (Canola, Palm, Palm Kernel),
Invert Sugar, Sugar, Glycerin, Contains Less Than 2% Of: Whey,
Corn Syrup Solids, Calcium Carbonate, Honey, Wheat Bran, Salt,
Potassium Bicarbonate, Sorbitan Monostearate, Vital Wheat
Gluten, Ground Cinnamon, Cornstarch, Xanthan Gum, Vitamin A
Palmitate, Reduced Iron, Thiamine Hydrochloride Vitamin B1),
Riboflavin (Vitamin B2), Niacin (Niacinamide), Pyridoxine
Hydrochloride (Vitamin B6), Folic Acid, Cyanocobalamin
(Vitamin B12), Zinc Oxide, Dicalcium Phosphate, Natural Flavors,
Molasses.

36.   Laboratory analysis using chiral HPLC and/or enzymatic methods with
D-malate dehydrogenase (D-MDH) concluded that the malic acid used in the
Product was the artificial DL-Malic Acid version, by identifying the synthetic D-
isomer.

37.   This was because D-Malic acid was preferentially oxidized over L-Malic
acid.

38.   The combination of DL-Malic Acid with sugars is not equivalent to the

natural flavors from apples.

39.   The addition of DL-Malic Acid imparts, creates, simulates, resembles and/or reinforces the sour, tart, sweet taste that apples are known for.

40.   Defendant could have added more apple ingredients or L-Malic Acid from apples, but used artificial DL-Malic Acid because it cost less and/or more accurately simulated, resembled, and/or reinforced the taste of apples.

41.   DL-Malic Acid is not a "natural flavor" as defined by federal and state regulations, because it is not from a fruit, vegetable or other natural source, but from petroleum and made through chemical reactions.

42.   DL-Malic Acid does not supplement, enhance or modify the original taste of apples, because it is a core component of this fruit. 21 C.F.R. § 170.3(o)(11).

## JURISDICTION AND VENUE

43.   Jurisdiction is based on the Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

44.   The aggregate amount in controversy exceeds $5 million, including any statutory or punitive damages, exclusive of interest and costs.

45.   Plaintiff is a citizen of Georgia.

46.   Defendant is a citizen of Florida.

47.   The class of persons Plaintiff seeks to represent includes persons who are citizens of a different state from which Defendant is a citizen.

48.   The members of the proposed class Plaintiff seeks to represent are more than 100, because the Product is sold at hundreds of Defendant's stores across the States Plaintiff seeks to represent.

49.   Venue is in the Tampa Division in this District because Defendant's principal place of business is in Polk County and because a substantial part of the events or omissions giving rise to these claims occurred in Polk County, i.e., Defendant's decisions for labeling the Product.

## **PARTIES**

50.   Plaintiff Jerkerris Griffin is a citizen of Richmond County, Georgia.

51.   Defendant Publix Super Markets, Inc. is a Florida corporation with a principal place of business in Lakeland, Florida, Polk County.

52.   Publix supermarkets were founded in 1930 by George W. Jenkins.

53.   Since its founding, the company has stayed true to its founder's philosophy of treating employees and customers like family.

54.   Publix is the largest employee-owned company in the United States.

55.   Every year, Publix is hailed as the No. 1 supermarket for customer satisfaction, one of Fortune's "100 Best Companies to Work For," and a model for its sustainability efforts and community involvement.

56.   Publix ranks No. 1 on Fortune's "World's Most Admired Companies" in the food store category.

57.   These rankings are based on evaluations by Publix workers and others in its industry, in areas from investment value to social responsibility.

58.   Publix is one of a handful of grocery chains in the United States with over 1,000 locations.

59.   Publix operates throughout the Southeastern United States, with locations in Florida, Georgia, Alabama, South Carolina, Tennessee, North Carolina, and Virginia.

60.   Consumers choose Publix because it embodies its well-known slogan, "Where Shopping Is a Pleasure," based on its convenience, cleanliness, ease of navigation, friendly workers, and its private label products.

61.   While Publix stores sell leading national brands, they sell hundreds of products under their private label Publix brand.

62.   Private label products are made by third-party manufacturers and sold under the name of the retailer, or its sub-brands.

63.   Previously referred to as "generic" or "store brand," private label products have increased in quality, and often are superior to their national brand counterparts.

64.   Products under the Publix brand have an industry-wide reputation for quality and value.

65.   In releasing products under the Publix brand, Defendant's foremost

criteria was to have high-quality products that were equal to or better than the national brands.

66.   Defendant is able to get national brands to produce its private label items due its loyal customer base and tough negotiating.

67.   That Publix branded products met this high bar was proven by focus groups, which rated them above the name brand equivalent.

68.   Private label products generate higher profits for retailers because national brands spend significantly more on marketing, contributing to their higher prices.

69.   A survey by The Nielsen Co. "found nearly three out of four American consumers believe store brands are good alternatives to national brands, and more than 60 percent consider them to be just as good."

70.   Private label products under the Publix brand benefit by their association with consumers' appreciation for the Publix brand as a whole.

71.   The development of private label items is a growth area for Publix, as they select only top suppliers to develop and produce Publix products.

72.   The Product is available to consumers from Defendant's retail stores and its website.

73.   Plaintiff read "Apple Cinnamon Flavored Fruit & Grain Cereal Bars," saw the label's green coloring and fonts and took notice that the front label lacked

any references to artificial flavoring.

74.   Plaintiff expected the Product's apple taste was from apples or natural flavoring materials designed to taste like apples.

75.   Plaintiff is part of the majority of consumers who avoid artificial flavors for the above-identified reasons related to health, nutrition and the environment.

76.   Plaintiff was unaware the Product contained artificial flavoring ingredients to provide its apple taste because this was not disclosed to him on the front label, which is where he would have expected to see this information.

77.   Plaintiff relied on the words, terms coloring, descriptions, layout, packaging, and/or images on the Product, on the labeling, statements, omissions, claims, statements, and instructions, made by Defendant or at its directions, in digital, print and/or social media, which accompanied the Product and separately, through in-store, digital, audio, and print marketing.

78.   Plaintiff purchased the Product on one or more occasions within the statutes of limitations for each cause of action alleged, at Publix locations near where he lives in Georgia which may include the Publix in Augustus, Georgia, between August 2021 and the present.

79.   Plaintiff bought the Product at or exceeding the above-referenced price.

80.   Plaintiff chose between Defendant's Product and products represented similarly, but which did not misrepresent their attributes, requirements, instructions,

features, and/or components.

81.   Defendant sold more of the Product and at higher prices than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers.

82.   As a result of the false and misleading representations, the Product is sold at a premium price, approximately no less than $2.99 for 8 bars, excluding tax and sales, higher than similar products, represented in a non-misleading way, and higher than it would be sold for absent the misleading representations and omissions.

83.   Plaintiff paid more for the Product than he would have paid had he known the representations were false and misleading, as he would not have bought it or paid less.

84.   Plaintiff intends to, seeks to, and will purchase the Product again when he can do so with the assurance its representations are consistent with its composition.

85.   Plaintiff is unable to rely on the labeling and representations not only of this Product, but other similar apple flavored products which fail to disclose artificial flavoring on the front label, because he is unsure whether those representations are truthful.

86.   If Defendant's labeling were to be truthful, Plaintiff could adequately rely on the labeling of other apple flavored products that did not disclose added

artificial flavoring.

## CLASS ALLEGATIONS

87.  Plaintiff seeks certification under Fed. R. Civ. P. 23 of the following class:

> **Florida and Georgia Class:** All persons in the States of Florida and Georgia who purchased the Product during the statutes of limitations for each cause of action alleged.

88.  Common questions of issues, law, and fact predominate and include whether Defendant's representations were and are misleading and if Plaintiff and class members are entitled to damages.

89.  Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair, misleading, and deceptive representations, omissions, and actions.

90.  Plaintiff is an adequate representative because his interests do not conflict with other members.

91.  No individual inquiry is necessary since the focus is only on Defendant's practices and the class is definable and ascertainable.

92.  Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

93.  Plaintiff's counsel is competent and experienced in complex class action

litigation and intends to protect class members' interests adequately and fairly.

94.   Plaintiff seeks class-wide injunctive relief because the practices continue.

## CAUSES OF ACTION

## COUNT I

## Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.201, *et seq.* and/or Georgia Fair Business Practices Act ("FBPA") O.C.G. § 10-1-390 *et seq.*

95.   Plaintiff incorporates by reference preceding paragraphs 1-42.

96.   Plaintiff brings this claim on his own behalf and on behalf of each member of the Florida and Georgia Class.

97.   Defendant violated and continues to violate Florida's Deceptive and Unfair Trade Practices Act by engaging in unfair methods of competition, unconscionable acts and practices, and unfair and deceptive acts and practices in the conduct of its business.

98.   Defendant misrepresented the Product through statements, omissions, ambiguities, half-truths and/or actions, that its apple taste was only from this ingredient and/or natural flavoring materials and not added artificial flavoring when it was also from the artificial flavoring ingredient of DL-Malic Acid.

99.   The material misstatements and omissions alleged herein constitute

16

deceptive and unfair trade practices, in that they were intended to and did deceive Plaintiff and the general public into believing that the Product's apple taste was from apples and/or natural flavoring materials and not added artificial flavoring, when it was also from the artificial flavoring ingredient of DL-Malic Acid.

100. Plaintiff and class members relied upon these representations and omissions of any front label disclosure about artificial flavoring in deciding to purchase the Product.

101. Plaintiff's reliance was reasonable because of Defendant's reputation as a trusted and reliable company, known for its high-quality products, honestly marketed to consumers.

102. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

103. Defendant's conduct offends established public policy and is immoral, unethical, oppressive, and unscrupulous to consumers.

104. Plaintiff and class members are entitled to damages in an amount to be proven at trial.

105. Defendant should also be ordered to cease its deceptive advertising and should be made to engage in a corrective advertising campaign to inform consumers that the Product contains artificial flavoring ingredients that supply part of its characterizing apple taste.

## COUNT II

## False and Misleading Adverting,
## Fla. Stat. § 817.41

106. Plaintiff incorporates by reference preceding paragraphs 1-42.

107. Plaintiff brings this claim on his own behalf and on behalf of each member of the Florida Class.

108. Defendant made misrepresentations and omissions of material fact, that the Product's apple taste was only from this ingredient and/or natural flavoring materials and not added artificial flavoring, through its advertisements and marketing, through various forms of media, product descriptions, and targeted digital advertising.

109. Defendant's false and deceptive representations and omissions are material in that they are likely to influence consumer purchasing decisions.

110. Defendant knew that these statements were false.

111. Defendant intended for consumers to rely on its false statements for the purpose of selling the Product.

112. Plaintiff and class members did in fact rely upon these statements.

113. Reliance was reasonable and justified because of Defendant's reputation as a trusted and reliable company, known for its high-quality products, honestly marketed to consumers.

114. As a result of Defendant's misrepresentations, Plaintiff and class members suffered damages in the amount paid for the Product.

115. Plaintiff and class members are entitled to damages and injunctive relief as set forth above.

## COUNT III

### Breaches of Express Warranty,
### Implied Warranty of Merchantability/Fitness for a Particular Purpose and
### Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*

116. Plaintiff incorporates by reference preceding paragraphs 1-42.

117. The Product was manufactured, identified, marketed, and sold by Defendant and expressly and impliedly warranted to Plaintiff and class members that its apple taste was only from this ingredient and/or natural flavoring materials and not added artificial flavoring.

118. Defendant directly marketed the Product to Plaintiff and consumers through its advertisements and marketing, through various forms of media, on the packaging, in print circulars, direct mail, and targeted digital advertising.

119. Defendant knew the product attributes that potential customers like Plaintiff were seeking, such as flavoring provided only by its characterizing ingredient like apples and/or natural flavoring materials and not added artificial flavoring and the absence of artificial flavorings, and developed its marketing and labeling to directly meet those needs and desires.

19

120. The representations were conveyed in writing and promised the Product would be defect-free, and Plaintiff understood this meant that its apple taste was only from this ingredient and/or natural flavoring materials and not added artificial flavoring.

121. Defendant affirmed and promised that the Product's apple taste was only from this ingredient and/or natural flavoring materials and not added artificial flavoring.

122. Defendant described the Product so Plaintiff and consumers believed its apple taste was only from this ingredient and/or natural flavoring materials and not added artificial flavoring, which became part of the basis of the bargain that it would conform to its affirmations and promises.

123. Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

124. This duty is based on Defendant's outsized role in the market for this type of product, custodian of the Publix brand, a trusted seller of groceries for close to a century.

125. Plaintiff recently became aware of Defendant's breach of the Product's warranties.

126. Plaintiff provided or provides notice to Defendant, its agents, representatives, retailers, and their employees that it breached the Product's express

20

and implied warranties associated with the Product.

127. Defendant received notice and should have been aware of these issues due to complaints by third-parties, including regulators, competitors, and consumers, to its main offices, and by consumers through online forums.

128. The Product did not conform to its affirmations of fact and promises due to Defendant's actions.

129. The Product was not merchantable because it was not fit to pass in the trade as advertised, not fit for the ordinary purpose for which it was intended and did not conform to the promises or affirmations of fact made on the packaging, container, or label, because it was marketed as if its apple taste was only from this ingredient and/or natural flavoring materials and not added artificial flavoring.

130. The Product was not merchantable because Defendant had reason to know the particular purpose for which the Product was bought by Plaintiff, because he expected its apple taste was only from this ingredient and/or natural flavoring materials and not added artificial flavoring and he relied on Defendant's skill and judgment to select or furnish such a suitable product.

## COUNT IV

### Fraud
### (Fed. R. Civ. P. 9(b) Allegations)

131. Plaintiff incorporates by reference preceding paragraphs 1-42.

132. Defendant misrepresented that the Product's apple taste was only from this ingredient and/or natural flavoring materials and not added artificial flavoring, by omitting the required "artificially flavored" disclosure from the front label.

133. The records Defendant is required to maintain, and/or the information inconspicuously disclosed to consumers, provided it with actual and constructive knowledge of this falsity and deception, through statements and omissions.

134. Rule 9(b) of the Federal Rules of Civil Procedure provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."

135. To the extent necessary, as detailed in the paragraphs above and below, Plaintiff has satisfied the requirements of Rule 9(b) by establishing the following elements with sufficient particularity.

136. WHO: Defendant, Publix, made material misrepresentations and/or omissions of fact in its advertising and marketing of the Product by representing that the Product's apple taste was only from this ingredient and/or natural flavoring materials and not added artificial flavoring.

137. WHAT: Defendant's conduct here was and continues to be fraudulent because it has the effect of deceiving consumers into believing that the Product's apple taste was only from this ingredient and/or natural flavoring materials and not added artificial flavoring.

138. Defendant omitted that the Product contains artificial flavoring to provide and contribute to its apple taste.

139. Defendant knew or should have known this information was material to all reasonable consumers and impacts consumers' purchasing decisions.

140. Yet, Defendant has and continues to represent that the Product's apple taste was only from this ingredient and/or natural flavoring materials and not added artificial flavoring.

141. WHEN: Defendant made material misrepresentations and/or omissions detailed herein, including that the Product's apple taste was only from this ingredient and/or natural flavoring materials and not added artificial flavoring, continuously throughout the applicable Class period(s) and through the filing of this Complaint.

142. WHERE: Defendant's material misrepresentations and omissions, that the Product's apple taste only from this ingredient and/or natural flavoring materials and not added artificial flavoring, were made in the advertising and marketing of the Product, on the front of the packaging which all consumers buying it will inevitably see and take notice of.

143. HOW: Defendant made written and visual misrepresentations and omissions in the advertising and marketing of the Product, that its apple taste only from this ingredient and/or natural flavoring materials and not added artificial flavoring.

144. As such, Defendant's representations are false and misleading.

145. And as discussed in detail throughout this Complaint, Plaintiff and class members read and relied on Defendant's representations and omissions before purchasing the Product.

146. WHY: Defendant misrepresented that the Product's apple taste was only from this ingredient and/or natural flavoring materials and not added artificial flavoring for the express purpose of inducing Plaintiff and class members to purchase the Product at a substantial price premium.

147. As such, Defendant profited by selling the misrepresented Product to thousands of consumers throughout the State of Florida.

## COUNT V

### Unjust Enrichment

148. Plaintiff incorporates by reference preceding paragraphs 1-42.

149. Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of Plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

### JURY DEMAND AND PRAYER FOR RELIEF

Plaintiff demands a jury trial on all issues.

   **WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying Plaintiff as representative and

the undersigned as counsel for the class;

2. Entering preliminary and permanent injunctive relief by directing Defendant to correct the challenged practices to comply with the law;

3. Awarding monetary, statutory, and/or punitive damages pursuant to applicable laws;

4. Awarding costs and expenses, including reasonable fees for Plaintiff's attorneys and experts; and

5. Other and further relief as the Court deems just and proper.

Dated:   July 3, 2023

Respectfully submitted,

/s/ *William Wright*

The Wright Law Office, P.A.
515 N Flagler Dr Ste P300
West Palm Beach FL 33401
(561) 514-0904
willwright@wrightlawoffice.com

*Lead Counsel for Plaintiff*

Sheehan & Associates, P.C.
Spencer Sheehan*
60 Cuttermill Rd Ste 412
Great Neck NY 11021
(516) 268-7080
spencer@spencersheehan.com

*\*Pro Hac Vice* Application Forthcoming