## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

JERKERRIS GRIFFIN, individually and
on behalf of all others similarly situated,

Plaintiff,

- against -

PUBLIX SUPER MARKETS INC.,

Defendant

8:23-cv-01490-SDM-AAS

First Amended
Class Action Complaint

Jury Trial Demanded

Plaintiff Jerkerris Griffin ("Plaintiff") alleges upon information and belief, except for allegations about Plaintiff, which are based on personal knowledge:

## I.   CONSUMER AVOIDANCE OF ARTIFICIAL FLAVORS

1.    According to the Wall Street Journal, "As consumer concern rises over artificial ingredients, more food companies are reconstructing recipes" to remove artificial flavors.[1]

2.    Recent surveys report that over eighty percent of Americans believe that foods with artificial flavor are less healthy than those with only natural flavors.

3.    According to Nielsen, the absence of artificial flavors is very important for over 40% of respondents to their Global Health & Wellness Survey.

4.    The trade journal, Perfumer & Flavorist, described "The Future of

---

[1] Lauren Manning, How Big Food is Using Natural Flavors to Win Consumer Favor, Wall Street Journal.

Artificial Flavors & Ingredients" as bleak, given consumer opposition to these synthetic ingredients.[2]

5.    Mintel announced that consumer avoidance of artificial flavors is just as strong as their desire for natural flavors, in its Report, "Artificial: Public Enemy No. 1."[3]

6.    Surveys by Nielsen, New Hope Network, and Label Insight concluded that between sixty and eighty percent of the public tries to avoid artificial flavors.

## II.   LEGAL BACKGROUND

7.    Over 100 years ago, consumers were similarly concerned about what was in the foods they bought for their families.

8.    In response to an unregulated environment where the use of untested, chemical ingredients were substituted for what was advertised on packaging, the Pure Food and Drug Act of 1906 established laws which assured the public they would get what they paid for.

9.    These requirements were strengthened when Congress adopted the Federal Food, Drug and Cosmetic Act ("FFDCA") in 1938. 21 U.S.C. § 301 *et seq*.

---

[2] Jim Kavanaugh, The Future of Artificial Flavors & Ingredients, Perfumer & Flavorist, June 12, 2017.
[3] Alex Smolokoff, Natural color and flavor trends in food and beverage, Natural Products Insider, Oct. 11, 2019; Thea Bourianne, Exploring today's top ingredient trends and how they fit into our health-conscious world, March 26-28, 2018; Nancy Gagliardi, Consumers Want Healthy Foods – And Will Pay More For Them, Forbes, Feb 18, 2015.

10.   The newly established Food and Drug Administration ("FDA") was aware of how companies would substitute dangerous and unhealthy flavoring chemicals in place of the more valued and promoted ingredients like fruit and fruit flavor.

11.   Beyond having the potential to cause physical harm, these synthetic substances were significantly cheaper than the highlighted ingredients and their natural flavoring compounds they replaced.

12.   To facilitate an honest marketplace and protect consumers, the rules required that whenever "[a] label, labeling, or advertising of a food makes any direct or indirect representations with respect to [a] primary recognizable flavor(s), by word, vignette, e.g., depiction of a fruit, or other means," it is considered its "characterizing flavor," and its source, whether natural or artificial, must be disclosed to consumers. 21 C.F.R. § 101.22(i)(1).

13.   According to one scholar, this rule "is premised on the simple notion that consumers value 'the real thing' versus a close substitute and should be able to rely on the label to readily distinguish between the two."[4]

14.   To reach this goal, the FDA defined a flavor as a substance which imparts taste. 21 C.F.R. §§ 101.22(a)(1) and (3).

---

[4] Steven Steinborn, Hogan & Hartson LLP, Regulations: Making Taste Claims, PreparedFoods.com, August 11, 2006.

15.    Then, it defined natural flavor as the "essential oil, oleoresin, essence or extractive" from fruits or vegetables, "whose significant function [] is flavoring rather than nutritional." 21 C.F.R § 101.22(a)(3).

16.    In contrast to natural flavors, artificial flavor referred to "any substance, the function of which is to impart flavor" from synthetic or chemical sources. 21 C.F.R § 101.22(a)(1).

17.    Florida adopted these laws through the Food Safety Act ("FSA") and accompanying regulations. Fla. Stat. § 500.01 *et seq*.; Fla. Stat. § 500.02(2) ("Provide legislation which shall be uniform, as provided in this chapter, and administered so far as practicable in conformity with the provisions of, and regulations issued under the authority of, the [FFDCA]."); FL Admin Code § 5K-4.002(1)(d) (adopting 21 C.F.R. Parts 101 and 102).[5]

18.    These laws consider a food "misbranded" and misleading if its labeling is false or misleading in any particular. 21 U.S.C. § 343(a); Fla. Stat. § 500.11(1)(a).

19.    A food can be "misbranded" is if it fails to indicate a "common or usual name." 21 U.S.C. § 343(i); Fla. Stat. § 500.11(i)(1).

20.    The "common or usual name" is required "accurately identif[y] or describe[s], in as simple and direct terms as possible, the basic nature of the food or its characterizing properties or ingredients." 21 C.F.R. § 102.5(a).

---

[5] Georgia has adopted the identical federal laws.

21.   Relevant to a food's common or usual name was the source of its taste, based on which ingredients were promoted on the packaging. 21 C.F.R. § 101.22(i).

22.   Since research showed how "consumers initially [] rely on extrinsic cues such as visual information on labels and packaging to evaluate [any] product," thereby "develop[ing] sensory expectations" about taste and the source of that taste, the FDA requires.[6]

23.   To ensure purchasers were not misled by foods promoted as having only natural flavors when they contained unnatural, synthetic, artificial flavors, the FDA defined these terms to promote an honest marketplace.[7]

## III.  FLAVOR OF APPLES AND STRAWBERRIES

24.   Taste is a combination of sensations arising from specialized receptor cells in the mouth.[8]

25.   Taste is defined as sensations of sweet, sour, salty, bitter, and umami.

26.   Taste is complex, because, for instance, the taste of sour includes the

---

[6] Lancelot Miltgen et al., "Communicating Sensory Attributes and Innovation through Food Product Labeling," Journal of Food Products Marketing, 22.2 (2016): 219-239; Helena Blackmore et al., "A Taste of Things to Come: The Effect of Extrinsic and Intrinsic Cues on Perceived Properties of Beer Mediated by Expectations," Food Quality and Preference, 94 (2021): 104326; Okamoto and Ippeita, "Extrinsic Information Influences Taste and Flavor Perception: A Review from Psychological and Neuroimaging Perspectives," Seminars in Cell & Developmental Biology, 24.3, Academic Press, 2013.

[7] Lauren Manning, How Big Food Is Using Natural Flavors to Win Consumer Favor, Wall Street Journal.

[8] Gary Reineccius, Flavor Chemistry and Technology § 1.2 (2d ed. 2005).

sourness of vinegar (acetic acid), sour milk (lactic acid), lemons (citric acid), apples (malic acid), and wines (tartaric acid).

27. Each of those acids is responsible for unique sensory characteristics of sourness.

28. Fruit flavors, including strawberry and apple flavor, are the sum of the interaction between their nonvolatile compounds, such as sugars and organic acids, and volatile compounds, including aromatic hydrocarbons, aldehydes, ketones and esters.

29. The prototypical apple and strawberry tastes are based on the interaction of their free sugars, glucose and fructose, with their predominant organic acids of malic acid and citric acid, to create their unique tart, sour and sweet flavor.[9]

30. Malic acid is the first predominant organic acid in apples, while in strawberries, it is the second predominant organic acid.

| Fruit | First Predominant Acids | Second Predominant Acids |
|---|---|---|
| Apple | Malic Acid (95%) | Tartaric Acid, Fumaric Acid |
| Apricot | Malic Acid (70%) | Citric Acid, Tartaric Acid |
| Blackberry | Citric Acid | Malic Acid |
| Blueberry | Citric Acid | Malic Acid, Quinic Acid |
| Cherry | Malic Acid (94%) | Tartaric Acid |
| Cherry (Tropical) | Malic Acid (32%) | Citric Acid |
| Chili Peppers (habanero) | Citric Acid | Malic Acid, Succinic Acid |
| Coconut | Malic Acid | Citric Acid |

---

[9] Y.H. Hui, et al., Handbook of Fruit and Vegetable Flavors, p. 693 (2010).

| | | |
|---|---|---|
| Dragon fruit | Malic Acid | Citric Acid |
| Grape | Malic Acid (60%) | Tartaric Acid |
| Grapefruit | Citric Acid | Malic Acid |
| Guava | Citric Acid | Malic Acid |
| Kiwi | Quinic Acid, Citric Acid | Malic Acid |
| Lemon | Citric Acid | Malic Acid |
| Lime | Citric Acid | Malic Acid |
| Mango | Citric Acid | Malic Acid, Tartaric Acid |
| Orange | Citric Acid | Malic Acid |
| Peach | Malic Acid (73%) | Citric Acid |
| Pear | Malic Acid (77%) | Citric Acid |
| Pineapple | Citric Acid | Malic Acid |
| Pomegranate | Malic Acid (>50%) | Citric Acid (>22%) |
| Raspberry | Citric Acid | Malic Acid, Tartaric Acid |
| Strawberry | Citric Acid | Malic Acid, Tartaric Acid |
| Tamarind | Tartaric Acid | Citric Acid, Malic Acid |
| Watermelon | Malic Acid (99%) | Fumaric Acid |

31. The amount and proportion of malic acid in apples and strawberries is critical to development of their characteristic tart, sour and sweet taste valued by consumers.

32. Malic acid is often referred to as "apple acid," with the word malic derived from the Latin mālum, for which Malus, the genus that contains all apple species, is named.

## IV. DESPITE PROMOTING NATURAL FLAVORS AND OMITTING ARTIFICIAL FLAVORING, PRODUCTS' TASTE IS FROM ARTIFICIAL FLAVORING

33. According to Paul Manning, CEO and president of Sensient Technologies, "Consumer desire for naturally flavored products is an emerging

7

trend."[10]

34.   To capture this trend, Publix Super Markets Inc. ("Defendant") sells cereal bars which purport to be filled with fruit and natural fruit flavors, in varieties including strawberry and apple cinnamon under the Publix brand ("Products").



35.   The labeling is misleading because despite represented as "Naturally Flavored," "Flavored…With Other Natural Flavors," and "Flavored," they contain artificial flavoring which simulates, resembles and reinforces their strawberry and

---

[10] Keith Nunes, Using natural ingredients to create authentic, fresh flavors, Food Business News, Sept. 20, 2018.

apple taste.

36.   While the ingredient lists in fine print on the back panels indicate the strawberry contains strawberries and natural flavors while the apple cinnamon contains apples, each includes "Malic Acid."

Strawberry

INGREDIENTS: STRAWBERRY FILLING (INVERT SUGAR, CORN SYRUP, STRAWBERRY PUREE CONCENTRATE, SUGAR, GLYCERIN, MODIFIED CORNSTARCH, SODIUM ALGINATE, CITRIC ACID, MONOCALCIUM PHOSPHATE, DICALCIUM PHOSPHATE, METHYLCELLULOSE, CARAMEL COLOR, MALIC ACID, FRUIT AND VEGETABLE JUICE FOR COLOR [RADISH, APPLE AND BLACKCURRANT CONCENTRATES], NATURAL FLAVORS), WHOLE GRAIN ROLLED OATS, WHOLE GRAIN WHEAT

**INGREDIENTS:** ==STRAWBERRY FILLING== (INVERT SUGAR, CORN SYRUP, ==STRAWBERRY PUREE CONCENTRATE==, SUGAR, GLYCERIN, MODIFIED CORNSTARCH, SODIUM ALGINATE, CITRIC ACID, MONOCALCIUM PHOSPHATE, DICALCIUM PHOSPHATE, METHYLCELLULOSE, ==MALIC ACID==, FRUIT AND VEGETABLE JUICE FOR COLOR [RADISH, APPLE AND BLACKCURRANT CONCENTRATES], ==NATURAL FLAVORS==)

Apple Cinnamon

INGREDIENTS: APPLE FILLING (INVERT SUGAR, CORN SYRUP, APPLE PUREE CONCENTRATE, SUGAR, GLYCERIN, MODIFIED CORNSTARCH, SODIUM ALGINATE, METHYLCELLULOSE, MALIC ACID, MONOCALCIUM PHOSPHATE, GROUND CINNAMON, DICALCIUM PHOSPHATE, CITRIC ACID, APPLE JUICE [FOR COLOR]), WHOLE GRAIN ROLLED OATS, WHOLE GRAIN WHEAT

**INGREDIENTS:** ==APPLE FILLING== (INVERT SUGAR, CORN

SYRUP, <mark>APPLE PUREE CONCENTRATE</mark>, SUGAR, GLYCERIN, MODIFIED CORNSTARCH, SODIUM ALGINATE, METHYLCELLULOSE, <mark>MALIC ACID</mark>, MONOCALCIUM PHOSPHATE, GROUND CINNAMON, DICALCIUM PHOSPHATE, CITRIC ACID, APPLE JUICE FOR COLOR]),

37. Malic acid has two isomers, or arrangements of atoms, L-Malic Acid and D-Malic Acid. 21 C.F.R. § 184.1069.

38. These are right and left-hand versions of the same molecular formula.[11]



39. L-Malic Acid occurs naturally in strawberries and apples and is responsible for their tart, sour and sweet taste.

40. D-Malic Acid does not occur naturally anywhere.

41. D-Malic Acid is found as a racemic mixture of the D and L isomers, or DL-Malic Acid.

42. The production of DL-Malic Acid begins with petroleum.

43. It involves a catalytic process with numerous chemical reactions,

[11] Dan Chong and Jonathan Mooney, Chirality and Stereoisomers (2019).

including heating maleic anhydride with water under extreme pressure at roughly 180°C.

44.   This results in an equilibrium mixture of malic and fumaric acids.

45.   The soluble fumaric acid is filtered off and recycled, and the synthetic, or DL-, malic acid is concentrated and crystallized.

46.   Laboratory analysis of the Products' fruit filling was performed, in accordance with accepted industry standards and protocols.

47.   Applying enzymatic testing methods through use of D-malate dehydrogenase (D-MDH), D-Malic acid was preferentially oxidized over L-Malic acid.

48.   The result was that the synthetic D-isomer of malic acid was identified, indicating the Products used artificial, DL-Malic Acid and not L-Malic Acid.

49.   The combination of DL-Malic Acid with the free sugars from apples and strawberries is not equivalent to the taste of apples, strawberries, and natural strawberry flavor.

50.   The addition of DL-Malic Acid imparts, creates, simulates, resembles and/or reinforces the characteristic tart, sweet and sour taste that apples and strawberries are known for.

51.   DL-Malic Acid is not a "natural flavor" as defined by federal and state regulations, because it is not from a fruit, vegetable, or other natural source, but from

petroleum, made through chemical reactions.

52.   DL-Malic Acid is an artificial flavoring ingredient.

53.   DL-Malic Acid does not supplement, enhance, or modify the original taste of apples and strawberries, because it is a core component of their fruit taste. 21 C.F.R. § 170.3(o)(11).

54.   The Products could have included more of the highlighted fruit ingredients of apples and strawberries, L-Malic Acid from apples and strawberries or more natural flavoring from sources other than apples and strawberries but used artificial DL-Malic Acid because it cost less and/or more accurately imparted, provided, simulated, resembled, and reinforced the taste of apples and strawberries.

55.   The "common or usual names" of "Apple Cinnamon Naturally Flavored Fruit and Grain Bars" and "Apple Cinnamon Flavored Fruit and Grain Cereal Bars" are misleading because they do not "accurately identif[y] or describe[s], in as simple and direct terms as possible, the basic nature of the food or its characterizing properties or ingredients." 21 C.F.R. § 102.5(a); FL Admin Code § 5K-4.002(1)(d).

56.   The "common or usual names" of "Strawberry Naturally Flavored Fruit and Grain Bars" and "Strawberry Flavored Fruit and Grain Cereal Bars With Other Natural Flavors" is misleading because it does not "accurately identif[y] or describe[s], in as simple and direct terms as possible, the basic nature of the food or its characterizing properties or ingredients." 21 C.F.R. § 102.5(a); FL Admin Code

§ 5K-4.002(1)(d).

57.    This is because these "common or usual names" fail to accurately disclose the source of the apple cinnamon and strawberry taste, in accordance with federal and state requirements. 21 C.F.R. § 101.22(i).

58.    The Products' "common or usual names" omit the presence of artificial flavoring, based on the presence of DL-Malic Acid, which imparts the taste of apples and strawberries.

59.    The result is that the Products are "misbranded" and mislead consumers to expect the fillings contain only the identified fruit ingredients and natural flavors, which is false, because they contain artificial flavoring.

60.    Federal and state regulations require that because the apple cinnamon cereal bars contain DL-Malic Acid that imparts the flavor of apples, "Apple Cinnamon" is required to "be accompanied by the word(s) 'artificial' or 'artificially flavored,'" such as "Artificial Apple Cinnamon Flavored" or "Artificially Flavored Apple Cinnamon." 21 C.F.R. § 101.22(i)(2).

61.    Federal and state regulations require that because the strawberry cereal bars contain DL-Malic Acid that imparts the flavor of strawberries, "Strawberry" is required to "be accompanied by the word(s) 'artificial' or 'artificially flavored,'" such as "Artificial Strawberry Flavored" or "Artificially Flavored Strawberry." 21 C.F.R. § 101.22(i)(2).

13

62.   By adding the synthetic ingredient of DL-Malic Acid, purchasers of the Products get a smaller amount of apples, strawberries and natural fruit flavors promised by the front labels.

63.   Consumers buying fruit filled cereal bars labeled as naturally flavored that omit any reference to artificial flavors are seeking to avoid these synthetic ingredients, created in a laboratory.

## V.   CONCLUSION

64.   As a result of the false and misleading representations, the Products are sold at a premium price, approximately $2.99 for 8 bars, excluding tax and sales, higher than similar products, represented in a non-misleading way, and higher than they would be sold for absent the misleading representations and omissions.

## JURISDICTION

65.   Jurisdiction is based on the Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

66.   The aggregate amount in controversy exceeds $5 million, including any statutory or punitive damages, exclusive of interest and costs.

67.   Plaintiff is a citizen of Georgia.

68.   Defendant is a citizen of Florida.

69.   The class of persons Plaintiff seeks to represent includes persons who are citizens of a different state from which Defendant is a citizen.

70.   The Court has jurisdiction over Defendant because it transacts business within Florida and sells the Products to consumers within Florida from the Publix stores in this State and online to citizens of this State.

71.   Defendant transacts business in Florida, through the sale of the Products to citizens of Florida from the Publix stores in this State and online to citizens of this State.

72.   Defendant has committed tortious acts within this State through the distribution and sale of the Products, which is misleading to consumers in this State.

## VENUE

73.   Venue is in the Tampa Division in this District because Defendant's principal place of business is in Polk County.

74.   Venue is in the Tampa Division in this District because a substantial part of the events or omissions giving rise to these claims occurred in Polk County, which was Defendant's decisions with respect to the Products' representations and omissions.

## PARTIES

75.   Plaintiff Jerkerris Griffin is a citizen of Georgia.

76.   Defendant Publix Super Markets Inc. is a Florida corporation with a principal place of business in Florida.

77.   Publix was founded in 1930 by George W. Jenkins.

15

78.   Since its founding, Publix company has stayed true to its founder's philosophy of treating employees and customers like family.

79.   Publix is the largest employee-owned company in the United States.

80.   Every year, Publix is hailed as the No. 1 supermarket for customer satisfaction, one of Fortune's "100 Best Companies to Work For," and a model for its sustainability efforts and community involvement.

81.   Publix ranks No. 1 on Fortune's "World's Most Admired Companies" in the food store category.

82.   These rankings are based on evaluations by Publix employees and others in its industry, in areas from investment value to social responsibility.

83.   Publix is one of a handful of grocery chains in the United States with over 1,000 locations.

84.   Publix operates throughout the Southeastern United States, with locations in Florida, Georgia, Alabama, South Carolina, Tennessee, North Carolina, and Virginia.

85.   Consumers choose Publix because it embodies its well-known slogan, "Where Shopping is a Pleasure," based on its convenience, cleanliness, ease of navigation, friendly workers, and its private label products.

86.   While Publix sells leading national brands of products, it also sells many products under one of its private label brands, Publix.

87.   Private label products are made by third-party manufacturers and sold under the name of the retailer, or its sub-brands.

88.   Previously referred to as "generic" or "store brand," private label products have increased in quality, and often are superior to their national brand counterparts.

89.   Products under the Publix brand have an industry-wide reputation for quality.

90.   In releasing products under the Publix brand, Defendant's foremost criteria was to have high-quality products that were equal to or better than the national brands.

91.   Publix gets national brands to produce its private label items due its loyal customer base and tough negotiating.

92.   Private label products under the Publix brand benefit by their association with consumers' appreciation for the Publix brand overall.

93.   That Publix-branded products met this high bar was or would be proven by focus groups, which rated them above their name brand equivalent.

94.   A survey by The Nielsen Co. "found nearly three out of four American consumers believe store brands [like Publix] are good alternatives to national brands, and more than 60 percent consider them to be just as good."

95.   Private label products generate higher profits for retailers like Publix

because national brands spend significantly more on marketing, contributing to their higher prices.

96.   The development of private label items is a growth area for Publix, as they select only top suppliers to develop and produce Publix products.

97.   Plaintiff is like most consumers and tries to buy food with ingredients known for their health and nutrition benefits like 100% fruit juice.

98.   Plaintiff is like most consumers who tries to avoid foods with artificial flavors, based on the belief they are potentially harmful, not natural and unhealthy.

99.   Plaintiff is like most consumers who prefers foods with natural ingredients and natural flavors.

100. Plaintiff is like most consumers who looks to the front label of foods to see what he is buying and to learn basic information about it.

101. Plaintiff is like most consumers who are accustomed to the front label of packaging telling them if what they are buying contains artificial flavoring.

102. Plaintiff is like most consumers who, when they see a label that lacks a reference to artificial flavoring on the front, will expect the food's taste is from natural flavoring.

103. Plaintiff read and relied on the label statements of "Apple Cinnamon Naturally Flavored Fruit and Grain Bars" and "Apple Cinnamon Flavored Fruit and Grain Cereal Bars."

104. Plaintiff read and relied on the label statements of "Strawberry Naturally Flavored Fruit and Grain Bars" and "Strawberry Flavored Fruit and Grain Cereal Bars With Other Natural Flavors."

105. Plaintiff relied on the green and red coloring for the apple cinnamon and strawberry cereal bars to indicate and support the labels' references to apples and strawberries.

106. Plaintiff relied on the omission of artificial flavoring on the Products' front labels.

107. Plaintiff did not expect that in addition to apples, strawberries, and natural flavoring, the Products would use added artificial flavoring in the form of the synthetic compound of DL-Malic Acid.

108. Plaintiff did not expect that the Products would use DL-Malic Acid in place of adding more apples, strawberries, and natural flavoring.

109. Plaintiff purchased the Publix apple cinnamon and/or strawberry cereal bars identified here with the labeling identified here at Publix stores in Georgia between July 2019 and July 2023.

110. Plaintiff bought the Products at or exceeding the above-referenced price.

111. Plaintiff paid more for the Products than he would have had he known their fruit fillings' taste was from artificial flavoring instead of only from the highlighted fruit ingredients and natural flavorings, as he would not have bought

them or would have paid less.

112. The Products were worth less than what Plaintiff paid, and he would not have paid as much absent Defendant's false and misleading statements and omissions.

## CLASS ALLEGATIONS

113. Plaintiff seeks to represent the following class:

> All persons in the States of Georgia and Florida who purchased the Products in Georgia and Florida during the statutes of limitations for each cause of action alleged.

114. Common questions of issues, law, and fact predominate and include whether Defendant's representations and omissions were and are misleading and if Plaintiff and class members are entitled to damages.

115. Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair, misleading, and deceptive representations, omissions, and actions.

116. Plaintiff is an adequate representative because his interests do not conflict with other members.

117. No individual inquiry is necessary since the focus is only on Defendant's practices and the class is definable and ascertainable.

118. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

119. The class is sufficiently numerous and likely includes several hundred thousand people.

120. This is because Defendant operates close to 900 stores in the States Plaintiff is seeking to represent, which serve a population of over 30 million people.

121. Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

### CAUSES OF ACTION

### COUNT I
Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"),
Fla. Stat. § 501.201, *et seq.* and/or Georgia Fair Business Practices Act
("FBPA"), O.C.G.A. § 10-1-390 *et seq.*
(On Behalf of the Georgia and Florida Class)

122. Plaintiff incorporates by reference paragraphs 1-64.

123. Plaintiff seeks to represent Georgia and Florida purchasers.

124. The purpose of FDUTPA and the FBPA is to protect consumers against unfair and deceptive practices.

125. This includes "making state consumer protection and enforcement consistent with established policies of federal law relating to consumer protection." Fla. Stat. § 501.202(3).

126. The labeling of the Products violated FDUTPA and the FBPA because the representations and omissions their filling was only from the identified fruits of apples and strawberries, and natural flavorings, when they contained added artificial

21

flavoring in the form of DL-Malic Acid, was unfair and deceptive to consumers. Fla. Stat. § 501.204(1).

127. The labeling of the Products violated FDUTPA and the FBPA because the representations and omissions their filling was only from the identified fruits of apples and strawberries, and natural flavorings, when they contained added artificial flavoring in the form of DL-Malic Acid, was contrary to the Food Safety Act and the Food Act, which adopted the FFDCA and accompanying regulations.

128. The FFDCA and its regulations prohibit consumer deception by companies in the labeling of food. Fla. Stat. § 501.203(3)(c).

129. Defendant received notice the labeling of the Products was misleading in the manner described here.

130. Plaintiff believed the Products' filling was only from the identified fruits of apples and strawberries, and natural flavorings, when they contained added artificial flavoring in the form of DL-Malic Acid.

131. Plaintiff paid more for the Products, would not have purchased them or paid as much if he knew that in addition to apples, strawberries, and natural flavorings, their fillings contained added artificial flavoring in the form of DL-Malic Acid.

132. Plaintiff seeks to recover for economic injury and/or loss he sustained based on the misleading labeling and packaging of the Products, a deceptive practice

under FDUTPA and the FBPA, by paying more for them than he otherwise would have.

133. Plaintiff will produce evidence showing how he and consumers paid more than they otherwise would have paid for the Products, relying on Defendant's representations and omissions, using statistical and economic analyses, hedonic regression, hedonic pricing, conjoint analysis and other advanced methodologies.

134. Defendant's false and deceptive representations and omissions are material in that they are likely to influence consumer purchasing decisions.

**COUNT II**
<u>False and Misleading Adverting,</u>
<u>Fla. Stat. § 817.41</u>
<u>(On Behalf of the Georgia and Florida Class)</u>

135. Plaintiff incorporates by reference paragraphs 1-64.

136. Defendant made misrepresentations and omissions of material fact, that the Products' fillings were only from the identified fruits of apples, strawberries, and natural flavorings, when they contained added artificial flavoring in the form of DL-Malic Acid, through its advertisements and marketing in various forms of media, product packaging and descriptions, and targeted digital advertising.

137. Defendant's false and deceptive representations and omissions are material in that they are likely to influence consumer purchasing decisions.

138. Plaintiff paid more for the Products, as he would not have purchased them or paid as much if he knew that their fillings were only from the identified

fruits of apples, strawberries, and natural flavorings, when they contained added artificial flavoring in the form of DL-Malic Acid.

139. Defendant knew these statements and omissions were false and/or misleading.

140. Defendant intended for consumers to rely on its false statements and omissions for the purpose of selling the Products.

141. Plaintiff and class members did in fact rely upon these statements and omissions.

142. Reliance was reasonable and justified because of Publix's reputation as a trusted name, with products honestly marketed to consumers.

143. As a result of Defendant's misrepresentations and omissions, Plaintiff and class members suffered damages in the amount paid for the Products and the premium amounts paid.

**COUNT III**
<u>Fraud</u>
<u>Fed. R. Civ. P. 9(b) Allegations</u>
<u>(On Behalf of the Georgia and Florida Class)</u>

144. Plaintiff incorporates by reference paragraphs 1-64.

145. Plaintiff satisfied the requirements of fraud by establishing relevant elements with sufficient particularity.

146. WHO: Defendant, Publix, made material misrepresentations and/or omissions of fact in its advertising and marketing of the Products, through

representing the taste of their fruit fillings were only from the identified fruits of apples, strawberries, and natural flavorings, when they contained added artificial flavoring in the form of DL-Malic Acid.

147. WHAT: Defendant's conduct was and continues to be fraudulent because it deceives consumers into believing the taste of the Products' fruit fillings were only from the identified fruits of apples, strawberries, and natural flavorings, when they contained added artificial flavoring in the form of DL-Malic Acid.

148. Defendant omitted telling consumers the taste of the Products' fruit fillings was not only from the identified fruits of apples, strawberries, and natural flavorings, because it had added artificial flavoring in the form of DL-Malic Acid.

149. Defendant knew or should have known this information was material to all reasonable consumers and impacts their purchasing decisions.

150. Upon information and belief, Defendant conducted or relied on research about consumer purchasing habits.

151. Defendant knew or should have known that almost all consumers seek to avoid products with artificial flavoring and look to the front label to see whether it says, "artificially flavored."

152. Defendant highlighted that the taste of the Products' fruit fillings was only from the identified fruits of apples, strawberries, and natural flavorings.

153. The records Defendant is required to maintain, and/or the information

25

inconspicuously disclosed to consumers, provided it with actual and constructive knowledge of this falsity and deception, through statements and omissions.

154. Yet, Defendant has represented and/or continues to represent that the Products' fruit fillings was not only from the identified fruits of apples, strawberries, and natural flavorings, because it had added artificial flavoring in the form of DL-Malic Acid

155. WHEN: Defendant made these material misrepresentations and/or omissions detailed herein, continuously throughout the applicable class period and/or through the filing of this Amended Complaint.

156. WHERE: Defendant's material misrepresentations and omissions, that the taste of the Products' fruit fillings was only from the identified fruits of apples, strawberries, and natural flavorings, even though it had added artificial flavoring in the form of DL-Malic Acid, were made in its advertising and marketing, on the front of the packaging, which all consumers buying would inevitably see and take notice of.

157. HOW: Defendant made written and/or visual misrepresentations and omissions in the advertising and marketing of the Products, that the taste of their fruit fillings was only from the identified fruits of apples, strawberries, and natural flavorings, even though it had added artificial flavoring in the form of DL-Malic Acid.

158. And as discussed in detail throughout this Amended Complaint, Plaintiff and class members read and relied on Defendant's representations and omissions about the source of the taste of the Products' fruit fillings before purchasing the Products.

159. WHY: Defendant misrepresented that the taste of the Products' fruit fillings was only from the identified fruits of apples, strawberries, and natural flavorings, even though it had added artificial flavoring in the form of DL-Malic Acid, for the express purpose of inducing Plaintiff and class members to purchase the Products at a substantial price premium, in part based on consumer demand for foods with only natural flavoring and without artificial flavoring.

160. Moreover, Defendant's use of artificial flavoring in the form of DL-Malic Acid, allowed it to use a smaller amount of apples, strawberries, and natural flavoring, which is what was highlighted on the labeling.

161. As such, Defendant profited by selling the misrepresented Products to thousands of consumers throughout Florida and Georgia.

<u>Jury Demand and Prayer for Relief</u>

Plaintiff demands a jury trial on all issues.

**WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying Plaintiff as representative and the undersigned as counsel for the class;

27

2. Awarding monetary damages and interest;

3. Awarding costs and expenses, including reasonable fees for Plaintiff's attorneys and experts; and

4. Other and further relief as the Court deems just and proper.

Dated:   November 26, 2023

Respectfully submitted,

/s/ William Wright
The Wright Law Office P.A.
515 N Flagler Dr Ste P300
West Palm Beach FL 33401
(561) 514-0904
willwright@wrightlawoffice.com

*Notice of Lead Counsel Designation:*

*Lead Counsel for Plaintiff*

William Wright

The Wright Law Office P.A.

Sheehan & Associates P.C.
Spencer Sheehan*
60 Cuttermill Rd Ste 412
Great Neck NY 11021
(516) 268-7080
spencer@spencersheehan.com

*Pro Hac Vice* Application Forthcoming

*Counsel for Plaintiff*